UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
MARY E. IGOE,                        :
                                     :   12 Civ. 6308 (DLC)
                     Plaintiff,      :
                                     :
         -v-                         :   OPINION & ORDER
                                     :
1199 SEIU HEALTH CARE EMPLOYEES      :
PENSION FUND,                        :
                                     :
                     Defendant.      :
------------------------------------ X

APPEARANCES:

For the Plaintiff:

Barry D. Haberman
254 South Main Street #404
New City, NY 10956

For the Defendant:

Suzanne Metzger
1199SEIU Benefit and Pension Funds
330 West 42nd Street, 31st Floor
New York, NY 10036


DENISE COTE, District Judge:

     Plaintiff Mary E. Igoe ("plaintiff") filed this action

against her late mother's pension fund, defendant 1199 SEIU

Health Care Pension Fund (the "Fund"), asserting that the Fund

violated the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. §§ 1001, et seq.  The Fund has moved for

summary judgment.  For the reasons that follow, the motion is

granted.

BACKGROUND

The following facts are undisputed.  In 1957, at age sixteen, plaintiff's mother, Mary Igoe ("Mary"), married John P. Igoe ("John").  Three years later, in 1960, John left Mary and their two children, the plaintiff and John Igoe, Jr., before taking up with another woman and fathering at least one other child with her.  Although Mary never spoke to John again, they never officially divorced.

From 1979 until 1996, Mary worked at the Montefiore Medical Center.  Through her sixteen and a half years of "Credited Service," she became eligible for the 1199 SEIU Health Care Employees Pension (the "Plan") from the Fund, totaling $986.00 per month.  The Plan provides, in relevant part, that Mary's pension is subject to a "Joint and One-Half (50%) Survivor Option," under which "[a]n actuarially-reduced pension shall be paid to the Pensioner . . . and continued each month for life with the provision that after [her] death one-half of such reduced pension shall be continued to be paid monthly to [her] joint pensioner for life."  The Plan provides two means by which a participant may elect a beneficiary other than her spouse:

> (a) The spouse must consent in writing to the
> election; the spouse's consent must acknowledge the
> effect of the election; and the spouse's signature
> must be witnessed by a notary public; or

      (b) the Participant shall demonstrate to the
satisfaction of the Retirement Committee, in
accordance with such evidence as the Retirement
Committee in its sole discretion shall require, that
the spouse cannot be located.

Mary first applied for her pension in 2005.  During the processing of her 2005 application, the Fund determined that Mary was married and that her spouse was therefore entitled to a 50% Joint and Survivor benefit.  Mary then submitted a letter indicating that she had not "seen or heard from John Igoe for over 40 years.  We have been apart for all this time.  He has not been involved in my life at all."

In October 2005, the Fund sent John a letter.  The letter informed him that his wife had applied for a pension and that, unless he agreed to waive his benefits, he would be the named beneficiary.  The letter further informed him that if he wished to waive his entitlement to benefits, he should fill out an attached "Spousal Waiver Agreement" and have it notarized.  Instead of doing this, John signed the bottom of the letter, indicating that he did not waive his rights to Mary's benefits.  Mary then put her application for benefits on hold.

In August 2010, Mary renewed her application for her pension.  In filling out her application, Mary listed John as her spouse, but then named her daughter, the plaintiff, as her beneficiary under the Joint & One Half Survivor Option.  Mary attached to the application an "Affidavit for Unlocatable

3

Spouse" stating that she had not been able to reach her husband at his last known address.  Also attached were receipts showing that mail to John Igoe had been returned unopened.[1]

According to the Fund, it again sent a letter to John and again was able to reach him.  The minutes from plaintiff's later appeal before the Retirement Committee state that John had returned the Fund's letter and attached to it his signed 2005 election letter, indicating that he still declined to waive his right to Mary's benefits.  Neither the Fund's 2010 letter to John nor his response, however, is in the record at this point.

In May 2011, the Fund began dispersing Mary's pension, retroactive to August 2010.  On January 28, 2011, Mary died intestate.  After her mother's death, on August 19, 2011, the plaintiff petitioned the Surrogate's Court of the State of New York in Rockland County to become the Administrator of her late mother's estate.  In filling out a form in connection with this application, plaintiff noted that Mary was survived by her husband, John.[2]  At a proceeding held in Surrogate's Court on November 22, 2011, John was represented by an attorney, who

---

[1] It is notable that the address at which Mary attempted to reach her husband in 2010 was not the same address at which the Fund succeeded in reaching him in 2005, which was the same address at which he was later reached in 2011.

[2] Plaintiff also listed John's address as 801 Neill Ave. in the Bronx, the same address at which the Fund reached him in 2005, but not the address at which Mary had attempted to reach him in 2010.

indicated that John would not object to plaintiff being named administrator of Mary's estate and recognized that he was giving up his entitlement to a sum of money from the estate.

On February 14, 2012, the Surrogate's Court issued a Decree finding that John had abandoned Mary and that he was therefore disqualified as a surviving spouse under New York State law. John died soon thereafter, in the summer of 2012.

Meanwhile, on August 3, 2011, plaintiff, acting through counsel, sent a letter to the Fund appealing its determination that John was Mary's beneficiary, and noting that Mary had named her daughter as her beneficiary on her 2010 application.  This appeal came before the Fund's Retirement Committee, which held a meeting to discuss it on September 19, 2011.  At the meeting and in its written determination, the Retirement Committee noted plaintiff's argument that John had abandoned Mary, but found that the Plan terms do not provide abandonment as a basis to deny a spouse a Joint and Survivor right, and that John had neither waived his right to Mary's benefits nor been shown to be lost.  Plaintiff received notice of the denial of her appeal by letter dated November 22, 2011.

The plaintiff filed the instant action on August 17, 2012, alleging that the Fund violated ERISA and breached its fiduciary duty by failing to make payments to her under the Plan and seeking declaratory, injunctive, and monetary relief under 29

U.S.C. § 1132(a)(1)(B).  On February 15, 2013, the Fund filed a motion for summary judgment, which was fully submitted on March 22, 2013.


DISCUSSION

Summary judgment may not be granted unless the submissions of the parties taken together "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a dispute as to a material fact, and in making this determination the court must view all facts in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on mere "allegations or denial" of the movant's pleadings.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010).  Nor can a non-movant "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Baines, 593 F.3d at 166.

ERISA provides a private right of action on behalf of a participant, beneficiary, or fiduciary of a benefit plan

> [t]o enjoin any act or practice which violates . . . the terms of the plan, or to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(1)(B); see also Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 509–10 (2d Cir. 2002); Lee v. Burkhart, 991 F.2d 1004, 1009 (2d Cir. 1993).

In an appeal of a plan's denial of benefits under § 1132(a)(1)(B), where the plan "gives its administrator broad discretion to construe the terms of the plan and to determine whether a claimant is entitled to payment of benefits, a court may reverse the administrator's decision only if it is arbitrary and capricious." Zervos v. Verizon N.Y., Inc., 277 F.3d 635, 650 (2d Cir. 2002). The parties do not dispute that the arbitrary and capricious standard applies here, as § 12.9 of the Plan grants the Trustees the "sole and absolute discretion to administer, apply, and interpret the plan."

> A decision is arbitrary and capricious if it is without reason, unsupported by substantial evidence or erroneous as a matter of law. Substantial evidence is defined as such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance.

Id. (citation omitted). When applying the arbitrary and capricious standard, a court "is not free to substitute its own

7

judgment for that of the plan administrator as if it were considering the issue of eligibility anew." <u>Id</u>. (citation omitted).

The Plan did not act arbitrarily and capriciously in affirming plaintiff's denial of benefits.  The relevant portions of the Plan are modeled on provisions in ERISA itself.  ERISA provides that a participant may not waive the surviving spouse's annuity unless:

> (i) the spouse of the participant consents in writing to such election, (ii) such election designates a beneficiary (or a form of benefits) which may not be changed without spousal consent (or the consent of the spouse expressly permits designations by the participant without any requirement of further consent by the spouse), and (iii) the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public.

29 U.S.C. § 1055(c)(2)(A).  Notwithstanding these requirements, a participant may also select a beneficiary other than her spouse if "it is established to the satisfaction of a plan representative that the consent required . . . may not be obtained . . . because the spouse cannot be located."  29 U.S.C. § 1055(c)(2)(B).  The Second Circuit has found these requirements to be "unambiguous." <u>Hurwitz v. Sher</u>, 982 F.2d 778, 781 (2d Cir. 1992).

Applying these terms to the plaintiff's appeal, the Retirement Committee determined that Mary was married at the time of her death, that John had not waived his entitlement to

benefits, and that he was not lost.  The Retirement Committee
therefore determined that although Mary and John had not been in
contact for forty years, Mary had not met the requirements of
the Plan and ERISA for naming her daughter as her beneficiary.
Because substantial evidence supports the Retirement Committee's
factual conclusions, there is no genuine issue as to whether its
decision was arbitrary and capricious, and the Fund is entitled
to summary judgment.

Plaintiff argues that the Fund's conclusion that John was
not "lost" was not supported by substantial evidence in the
record.  In particular, plaintiff stresses that neither the
Fund's 2010 letter to John nor his response are in the
administrative record.  While both the Retirement Committee
agenda and the Committee's written findings make reference to
this correspondence, it appears that it was never made part of
the documentary record.  In light of Mary's 2010 "Affidavit for
Unlocatable Spouse" and returned mail addressed to John,
plaintiff argues that the record does not contain substantial
evidence to support the conclusion that John was not in fact
lost.

Plaintiff does not, however, dispute that the Fund was able
to reach John in 2005, or that plaintiff herself was able to
reach him in 2011, at the same address, in connection with the

9

proceedings in Surrogate's Court.[3]   In fact, the record shows
that Mary's returned letter to John was sent to a different
address than the address at which he was reached in both 2005
and 2011.

Furthermore, plaintiff's counsel's letter appealing the
Fund's initial benefits determination indicated that the Fund
had informed Mary on July 1, 2010, that they had located John
and that he had declined to waive his entitlement to her
benefits.   The Retirement Committee's minutes from its hearing
on the appeal also indicate that John responded to the Fund's
2010 correspondence, and do not reflect that plaintiff argued
that John could not actually be located.   Thus, while the 2010
correspondence itself is not in the record at this point, there
is ample reason to conclude that this correspondence was before
the Fund's Retirement Committee at the time it made its
decision.   Such evidence was more than sufficient to find that
John was not lost.

It is also notable that the terms of the Plan place on a
participant the burden of demonstrating that a spouse cannot be

---

[3] The Surrogate's Court proceedings occurred after the Fund's
denial of plaintiff's appeal and were therefore not part of the
administrative record.   Nevertheless, plaintiff suggests that
the Court consider this material in reviewing the Fund's
decision, and defendant does not appear to object.   The Court
will therefore exercise its discretion to consider this
evidence.   See Krauss v. Oxford Health Plans, Inc., 517 F.3d
614, 631 (2d Cir. 2008).

located.  In the words of the Plan, "the Participant shall
demonstrate to the satisfaction of the Retirement Committee, in
accordance with such evidence as the Retirement Committee in its
sole discretion shall require, that the spouse cannot be
located."  It cannot be said that the Plan acted arbitrarily and
capriciously in determining that Mary had not met this burden,
in light of the facts showing that John could in fact be
located, as had been done by both the Plan and the plaintiff.

Plaintiff next argues that the finding of abandonment by
the Surrogate's Court should have the effect of destroying
John's entitlement Mary's benefits under ERISA.  ERISA section
1055(c)(2)(B) provides that a participant's decision to waive
the surviving spousal annuity shall not take effect unless,
inter alia, spousal consent may not be obtained "because there
is no spouse, because the spouse cannot be located, or because
of such other circumstances as the Secretary of the Treasury may
by regulations prescribe."  29 U.S.C. § 1055(c)(2)(B).  Federal
regulations in turn provide that, in addition to the situations
listed in Section 1055(c)(2)(B), spousal consent is not required
to waive the spousal annuity if "the participant is legally
separated or the participant has been abandoned (within the
meaning of local law) and the participant has a court order to
such effect."  26 C.F.R. § 1.401(a)-20, Q & A 27.  Nevertheless,
this language clearly requires that "the participant," i.e.,

Mary, have a court order of abandonment, and it is undisputed that the order of abandonment was not obtained until after Mary's death.

It is, moreover, an open legal question in this Circuit whether ERISA Section 1055(c)(2)(B) necessarily requires that this language be imposed on ERISA plans, regardless of whether it is compatible with the terms of a plan.  In <u>Board of Trustees v. Royce</u>, 238 F.3d 177 (2d Cir. 2001), the court confronted an argument that Section 1055(c)(2)(B) allowed a participant to waive the surviving spouse annuity by showing that there had been a legal separation, one of the grounds listed in 26 C.F.R. § 1.401(a)-20.  The court observed that while it had previously interpreted certain provisions in Section 1055 as "mandatory, not optional," and had therefore read them into plans that did not contain them, it was unlikely that the exception for legal separation or abandonment was entitled to the same treatment. <u>Royce</u>, 238 F.3d at 180 (quoting <u>Lefkowitz v. Arcadia Trading Co. Ltd. Ben. Pension Plan</u>, 996 F.2d 600, 603-04 (2d Cir. 1993)).  Previous cases, the court noted, had relied on Congress's desire to protect the spouses of beneficiaries, and imposing these exceptions would "disadvantage [spouses] by forcing plans to recognize additional exceptions to the consent requirement." <u>Id</u>.  <u>Royce</u> thus suggests, without holding, that the exception for abandonment is not mandatory.  At any rate, this issue need

not be resolved here, as the regulation at issue only waives the requirement of spousal consent if "the participant has a court order [of abandonment]." Plaintiff's acquisition of a posthumous finding of abandonment is therefore not legally sufficient to waive ERISA's default surviving spouse annuity.

Plaintiff also argues that the finding of abandonment renders John an "unworthy heir" under state law and therefore not entitled to benefits under Mary Igoe's pension. It is well settled that ERISA preempts state law. Boggs v. Boggs, 520 U.S. 833, 841 (1997). Plaintiff cites one non-binding case holding that a spouse who murdered her husband was not entitled to his retirement benefits, because "Congress did not intend ERISA to preempt state laws which prohibit murderers from reaping financial benefits as a result of their crimes." New Orleans Elec. Pension Fund v. Newman, 784 F. Supp. 1233, 1236 (E.D. La. 1992). The instant case obviously implicates no such state law, and plaintiff has not cited any decision holding that the requirements of ERISA are trumped by a state finding of abandonment. Indeed, any state law that "conflicts with the provisions of ERISA or operates to frustrate its objects" is preempted. Boggs, 520 U.S. at 841; see also Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 147-50 (2001) (ERISA preempts state law that automatically revokes designation of spouse as beneficiary in event of divorce).

CONCLUSION

The Fund's February 15 motion for summary judgment is granted.  The Clerk of Court shall enter Judgment for the defendant and close the case.


SO ORDERED:

Dated:     July 10, 2013
           New York, New York

                          _____
                                   DENISE COTE
                          United States District Judge